IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY VOGELSBERG,

               Plaintiff,

  v.

YOUNG KIM, CHERYL WATERS, SATINDER
DHANOA, BRENDA BREDLOW, STEPHANIE
WEBSTER, MELISSA BENNET, TENZIN ENDERS,
JAMES MATTHEWS, CORRECT CARE SOLUTIONS,
and DANE COUNTY,

               Defendants.

OPINION and ORDER

17-cv-596-jdp

---

      Pro se plaintiff and prisoner Jeffrey Vogelsberg is proceeding on multiple claims related to his conditions of confinement while he was housed at the Dane County jail in 2014. Specifically, Vogelsberg alleges that defendants failed to provide adequate medical care for serious gastrointestinal issues and then placed him in segregation when he complained about the lack of care.

      Three motions filed by Vogelsberg are before the court: (1) a motion under Federal Rule of Civil Procedure 56(d) for an extension of time to respond to defendants' two summary judgment motions, Dkt. 86; (2) a motion for appointment of a guardian ad litem, Dkt. 96; and (3) a motion to seal the documents supporting the motion for appointment of a guardian ad litem, Dkt. 100. For the reasons explained below, I am denying all of these motions, with the exception that I will require defendants to provide Vogelsberg a copy of his medical records.

ANALYSIS

I will begin with Vogelsberg's motion to appoint a guardian ad litem under Federal Rule of Civil Procedure 17(c)(2) on the ground that he is incompetent.[1] Vogelsberg doesn't say who prepared this motion, but he does say that "[h]e has had the assistance of a Jailhouse Lawyer on preparing and filing all of the documents in this Action," Dkt. 97, at 7, so I assume that a jailhouse lawyer prepared this motion as well.

Rule 17(c)(2) states that "[t]he court must appoint a guardian ad litem–or issue another appropriate order–to protect a[n] . . . incompetent person who is unrepresented in an action." Under Rule 17(b)(1), the determination whether a person is incompetent or otherwise lacks the capacity to sue is governed by the state law where the person is domiciled. The domicile of a prisoner is "the state of which he was a citizen before he was sent to prison unless he plans to live elsewhere when he gets out, in which event it should be that state." *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) (internal quotations omitted). Vogelsberg doesn't say where he lived before his incarceration or where he plans to go after his release, but he assumes that Wisconsin law controls, so I will do the same.

The Wisconsin Court of Appeals assesses mental competency in the civil litigation context by evaluating three factors: (1) the person's ability to reasonably understand pertinent information; (2) the person's ability to rationally evaluate litigation choices based upon that information; and (3) the person's ability to rationally communicate. *Kainz v. Ingles*, 2007 WI App 118, ¶ 52, 300 Wis. 2d 670, 705, 731 N.W.2d 313, 331.

---

[1] Defendants filed an opposition to this motion on August 9. Dkt. 101. I did not request the brief and have not considered it, so it is unnecessary to ask Vogelsberg to submit a reply brief.

Most of Vogelsberg's motion has nothing to do with his competency as defined in Wisconsin law. For example, Vogelsberg says that his claims raise complex legal and factual issues, that he needs an expert witness to prove his claims, that his status as a prisoner makes it difficult for him to conduct discovery, that defendants have been refusing to provide discovery, and that prison staff are denying him access to the law library. But those are the kinds of issues that pro se litigants raise when trying to show that they are entitled to assistance in recruiting counsel. *See Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (question on request for counsel is whether the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it). The logistical and practical difficulties a plaintiff may face in litigating a case do not show that the plaintiff is unable to make rational choices.

The only allegations related to incompetence in Vogelsberg's motion are that he suffers from several mental health conditions: schizophrenia, posttraumatic stress disorder, attention deficit hyperactivity disorder, oppositional defiance disorder, depression, anxiety, and dementia. Vogelsberg also says that he was diagnosed with "possible learning disabilities or mental retardation."

Schizophrenia is a serious illness, but the only medical record Vogelsberg submitted about the illness says that his schizophrenia is "in partial remission with medication." Dkt. 98-1. He does not allege that he suffers from symptoms when he is taking his medication.

Vogelsberg's only evidence about mental retardation is a discharge summary from almost 20 years ago. Dkt. 98-4. The summary relates to a hospitalization for threatening to harm himself. Although the summary includes a line that Vogelsberg has "[p]ossible learning disabilities or mental retardation," there is no foundation for that conclusion in the summary.

And Vogelsberg's declaration includes no additional information about any disabilities related to his intelligence.

Vogelsberg has provided no documentation that he suffers from dementia. And his declaration doesn't describe any symptoms related to dementia.

As for the other mental health conditions, Vogelsberg alleges that they had adverse effects on him, but he doesn't allege that they prevent him from understanding his claims or from making rational choices. Further, I see nothing in Vogelsberg's deposition suggesting that he is confused or otherwise mentally impaired. *See* Dkt. 68. In sum, I am not persuaded that Vogelsberg is incompetent.

I am also not persuaded that the case is too difficult for Vogelsberg to litigate without counsel. Thus far, Vogelsberg's submissions demonstrate an understanding of the relevant legal and factual issues in this case. Those submissions have been clear and easy to follow.

Although Vogelsberg says that his submissions have been prepared by other prisoners, the general rule is that a litigant's reliance on a fellow inmate for assistance in drafting legal filings does not factor into a court's analysis when deciding whether to assist with the recruitment of counsel. *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) ("[T]he fact that an inmate receives assistance from a fellow prisoner should not factor into the decision whether to recruit counsel."). This is because receiving assistance from a jailhouse lawyer is not proof that a plaintiff is himself incapable of presenting his case. As discussed above, Vogelsberg has not presented evidence that he is unable to read, write, or understand his claims. It may be that Vogelsberg will be able to find another prisoner to help him prepare his summary judgment submissions. Or it may be that Vogelsberg will be able to litigate the case on his own. But until Vogelsberg tries, I have no basis for inferring that he needs the assistance of counsel.

Most of Vogelsberg's claims do not require medical expertise or mastery of complex legal issues. Even for his medical claims, most of his allegations are not that defendants provided the *wrong* care, but that they refused to provide any care at all. And defendants' summary judgment submissions are primarily devoted to arguing that the medical records and Vogelsberg's own testimony show that they provided prompt treatment and did not retaliate against him. In responding to these arguments, Vogelsberg's primary task will be to explain his side of the story, citing his own testimony and his own medical records where necessary.

The one exception are Vogelsberg's negligence claims, especially the claim that defendant Young Kim was negligent in prescribing naproxen for Vogelsberg the same time he was taking a blood-thinning drug, even though prescribing both drugs can have harmful side effects. Defendants seek summary judgment for that claim on the ground that Vogelsberg has failed to obtain expert testimony that Kim did not meet the standard of care. *See* Dkt. 82, at 13–16. But jurisdiction over the state law claims rests on their relationship to the federal claims. *See* 28 U.S.C. § 1367. If the federal claims are resolved before trial, the general rule is that the court must decline to exercise jurisdiction over any remaining state law claims. *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019). So it would be premature to assist in recruiting counsel on claims that this court may never address. It makes more sense to put the state law claims on hold while the parties complete briefing on the federal claims. Once I resolve the summary judgment motions as to the federal claims, I will consider the appropriate next steps.

Vogelsberg's other reasons for needing assistance are not persuasive. First, Vogelsberg says that a prisoner's ability to obtain documents under the Wisconsin Open Records Law, Wis. Stat. § 19.32, is limited. But Vogelsberg doesn't identify any documents he needs that he can't obtain in discovery. Second, Vogelsberg says that it is more difficult for him to investigate

the conditions at the Dane County jail because he is no longer incarcerated there. But, again, Vogelsberg hasn't identified any information he cannot obtain in discovery. Third, Vogelsberg says that prison staff are interfering with his ability to use the library. But Vogelsberg has made the same argument before, *see* Dkt. 43 and Dkt. 85, and his new argument fails for the same reasons as the previous ones. Specifically, Vogelsberg has failed to show that any limitations on his library time have prevented him from litigating this case. As Vogelsberg's many motions show, he hasn't been prevented from making arguments or otherwise communicating with the court. And if prison staff *do* interfere with Vogelsberg's ability to litigate the case, the proper response is not to appoint a lawyer, but to ask the court to stop the interference.

Vogelsberg's last argument is that defendants have been failing to provide needed discovery. This argument dovetails with Vogelsberg's Rule 56(d) motion, so I will consider them together. In his Rule 56(d) motion, Vogelsberg says that defendants have failed to provide much of the discovery he requested. But much of the requested discovery is either irrelevant or disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). For example, he asked for all "non-medical policies" of Correct Care Solutions, the names and credentials of all CCS employees at the Dane County jail in the last 10 years, information about CCS's contracts with facilities other than the Dane County jail, all grievances filed by Dane County jail inmates against CCS, all lawsuits within the last 16 years brought by inmates for inadequate medical care, all disciplinary records of the defendants, and any investigations at the Dane County jail related to the treatment of inmates. These requests are all significantly overbroad and are not tailored to the issues in this case. Perhaps narrower requests would be appropriate, but Vogelsberg hasn't shown that he needs *any* of this information to properly respond to defendants' motions for summary judgment, which is the standard under Rule 56(d). *Sterk v.*

*Redbox Automated Retail, LLC*, 770 F.3d 618, 627–28 (7th Cir. 2014) ("The Rule places the burden on the non movant that believes additional discovery is required to state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery." (internal quotations omitted)).

The one exception is Vogelsberg's medical records. Vogelsberg alleges that defendants have refused to provide those; defendants say that they already have. Vogelsberg doesn't reconcile his allegation with the fact that he refers to his medical records throughout his deposition. *E.g.*, Dkt. 68, at 23:10–15, 81:9, 82:5–11, 94:13–14. But to prevent further delay, I will direct defendants to serve Vogelsberg with a copy of his medical records from the Dane County jail during the time relevant to this case. And to prevent a further dispute, defendants should submit proof of service to the court, along with a description of the documents served. If Vogelsberg doesn't receive any of the documents, he will have to notify the court promptly.

The only remaining issue is Vogelsberg's motion to seal the documents supporting the motion for appointment of a guardian ad litem. In this circuit, any documents that "influence or underpin the judicial decision are open to public inspection unless" the documents include "trade secrets," "information covered by a recognized privilege," or "information required by statute to be maintained in confidence." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545–46 (7th Cir. 2002). Vogelsberg relied on the documents he is asking to be sealed and I considered the documents in ruling on the motion, but he hasn't shown that the information at issue falls within any of the protected categories. He cites the Health Insurance Portability and Accountability Act (HIPAA), but that statute generally applies to health care providers disclosing a patient's documents, *see United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007) (citing 45 C.F.R. §§ 164.508 and 160.103), not to a patient disclosing his own records. Another

7

court considering a similar HIPAA objection observed that "plaintiffs who place their medical condition at issue waive any applicable privileges or statutory protections that their medical records would have otherwise had." *Tyson v. Regency Nursing, LLC*, No. 17-cv-91-djh, 2018 WL 632063, at *1–2 (W.D. Ky. Jan. 30, 2018). Vogelsberg hasn't cited any HIPAA provisions that would give him the right to keep his records in this case sealed, so I will deny his motion.

ORDER

IT IS ORDERED that:

1. Plaintiff Jeffrey Vogelsberg's motion for appointment of a guardian ad litem, Dkt. 96, is DENIED.

2. Vogelsberg's Rule 56(d) motion, Dkt. 86, is DENIED with one exception. Defendants may have until August 20, 2019, to: (1) serve Vogelsberg with a copy of his medical records from the Dane County jail during the time period relevant to this case; and (2) file proof of service with the court, along with a description of the documents provided.

3. Vogelsberg's motion to seal, Dkt. 100, is DENIED.

4. Vogelsberg may have until September 12, 2019, to file a response to defendants' motion for summary judgment. Vogelsberg must respond to defendants' arguments related to his claims under federal law. Vogelsberg need not respond to arguments related only to his state claims at this time. Defendants may have until September 23, 2019, to file a reply. If Vogelsberg doesn't file a response by September 12, the court will treat the summary judgment motions as unopposed. The court will not grant further extensions of time in the absence of extraordinary circumstances.

5. In light of the multiple delays to the briefing of the summary judgment motions, the October 21, 2019 trial date is no longer realistic. The trial date and all pretrial

deadlines are STRUCK. The court will reset these deadlines if necessary after resolving the summary judgment motions.

Entered August 13, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge