IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY VOGELSBERG,

                Plaintiff,

v.

YOUNG KIM, CHERYL WATERS, SATINDER
DHANOA, BRENDA BREDLOW, STEPHANIE
WEBSTER, MELISSA BENNET, TENZIN ENDERS,
JAMES MATTHEWS, CORRECT CARE SOLUTIONS,
and DANE COUNTY,

                Defendants.

OPINION and ORDER

17-cv-596-jdp

---

The court held a telephonic status conference in response to plaintiff Jeffrey Vogelsberg's letter in which he stated that he was uncertain how to respond to defendants' motions for summary judgment. Dkt. 109. Vogelsberg appeared on his own behalf; defendant Dane County appeared by Matteo Reginato; Correct Care Solutions and the individual defendants appeared by Ryan Wiesner. This order will summarize what happened at the telephone conference and explain more thoroughly why I believe that Vogelsberg is capable of representing himself in this case.

ANALYSIS

A. Matters addressed at the telephone conference

I addressed three matters at the conference. First, I gave Vogelsberg an overview of what he must to do to respond to defendants' motions for summary judgment. As discussed at the conference, I am sending Vogelsberg written instructions about summary judgment that come from this court's guide for pro se litigants. I am also sending Vogelsberg another copy of the

preliminary pretrial conference order and the attachments to the order. Vogelsberg should carefully review all of these materials, especially the attachments on "Motions for Summary Judgment" and "Guidance to Pro Se Litigants Regarding Motions for Summary Judgment." Those documents include information that Vogelsberg will need to know to comply with this court's rules related to summary judgment.

Second, I set a new deadline for Vogelsberg to respond to defendants' summary judgment motions. Correct Care Solutions proposed a 45-day deadline; Dane County proposed a 60-day deadline; Vogelsberg asked for three months. The amount of time that Vogelsberg is requesting is significantly longer than is ordinarily allowed, even in cases involving pro se litigants. And it has already been more than four months since defendants filed their summary judgment motions. But Vogelsberg says that he needs the extra time because he will be undergoing heart valve surgery in the next few weeks, which will prevent him from working on this case. To prevent any unfair prejudice to Vogelsberg, I granted him the full three-month extension. Vogelsberg should use the extra time well. I will not be granting any further extensions.

Third, I denied Vogelsberg's motion to strike his deposition. Dkt. 111. In the motion, Vogelsberg says that defendants failed to comply with Federal Rule of Civil Procedure 30 before taking his deposition. Specifically, he says that the deposition notice was filed on behalf of Dane County only, so the Correct Care defendants never gave him reasonable notice as required by Rule 30(b)(1). And only the Correct Care defendants asked the court for permission to depose Vogelsberg (on the day before the deposition, Dkt. 65), so Dane County never received permission from the court to depose him, as required by Rule 30(a)(2)(B).

Basically, Vogelsberg says that neither set of defendants complied with both requirements, so the deposition is void.

Even if I assume that there was a technical violation of Rule 30, I am not persuaded that striking the deposition is an appropriate remedy because Vogelsberg hasn't identified any prejudice. Although he says that Correct Care's failure to send its own deposition notice prevented him from preparing for the deposition, he doesn't say how. For example, he doesn't identify topics addressed at the deposition that he wasn't able to anticipate and he doesn't point to any answers he gave that were inaccurate. As discussed further in the next section, my own review of the deposition revealed that Vogelsberg had a thorough understanding of the facts of his case. His answers did not appear confused or uncertain. But if Vogelsberg believes that any of his deposition testimony is incomplete or needs clarification, he is free to supplement that testimony in a declaration that he files with his summary judgment response.

**B. Vogelsberg's ability to represent himself**

In Vogelsberg's letter to the court, Dkt. 109, Vogelsberg said that he didn't know what a "summary judgment" is or how to respond to it. Because this again raises the question whether Vogelsberg is able to represent himself in this case, I will explain in some detail why I believe that he is, discussing both the evidence that he has cited and other evidence that is part of the record.

**1. Mental health issues.**

Vogelsberg said in his motion to appoint a guardian ad litem that he suffers from several mental health conditions. *See* Dkt. 96. I explained in the order denying that motion that the evidence Vogelsberg cited related to those conditions either showed that they were under control or simply failed to show that Vogelsberg's litigation abilities were impaired. Dkt. 104.

3

Although Vogelsberg has objected to the conclusions in that order multiple times, *see* Dkt. 106 and Dkt. 108, he hasn't submitted any additional evidence.

### 2. Vogelsberg's filings

A review of Vogelsberg's court filings reveals a litigant who is smart and capable. Vogelberg's complaint was clear, well organized and demonstrated an understanding of the law. He asserted *16* counts against a dozen different defendants, including municipal defendants Dane County and Correct Care Solutions. He cited relevant statutes and constitutional provisions, showing that he understood all of them. He clearly articulated the legal theories underlying all of his claims Even the remedies section of his complaint was well developed and included detailed requests for declaratory and monetary relief. I allowed him to go forward on the majority of the claims that he asserted. Dkt. 8.

After the screening order but before the preliminary pretrial conference, Vogelsberg had the wherewithal to send the court a letter asking for copies of local rules and procedures. Dkt. 25.

Throughout the case, Vogelsberg has filed numerous motions any time he wants assistance from the court. He has filed motions about: access to the prison law library, Dkt. 39; defendants' alleged failures to provide discovery, Dkts. 39, 84, 86; extensions of time for the expert disclosure deadline, Dkts. 44, 47, 50; filing documents under seal, Dkt. 58 and Dkt. 100; staying the case to while he tries to get a lawyer to represent him, Dkt. 63.

Some of these motions show a level of sophistication well above that of most pro se litigants. In Vogelsberg's motions for an extension of time to find an expert, Vogelsberg understood the potential importance of expert testimony on his state-law claim and he accurately predicted that defendants would seek to dismiss that claim for lack of expert

4

testimony.[1] In his motions related to sealing docket entries, Vogelsberg showed awareness of confidentiality concerns and his rights under HIPAA to keep medical information private.

In the motion to strike his deposition, Dkt. 111, Vogelsberg made a creative argument about defendants' failure to comply with Rule 30 before taking his deposition. Although I denied the motion to strike for lack of prejudice, the motion nevertheless demonstrates detailed knowledge of the federal rules and an ability to understand technical legal issues.

On the other hand, there are two documents in which Vogelsberg says that he doesn't understand the litigation process. I am referring specifically to: (1) the letter he filed on July 15, 2019, Dkt. 94, in which he said he didn't know what to do when he received defendants' opposition to his Rule 56(d) motion; and (2) the letter he filed in which he says he doesn't know what summary judgment is, Dkt. 109.

Vogelberg's explanation for this discrepancy is that most of his filings were prepared by someone else. I will discuss that issue next.

3. **Assistance from a jailhouse lawyer**

Vogelsberg consistently alleges that nearly all of his documents were drafted by another prisoner. And he has alleged multiple times that he needs court assistance because he no longer has access to a jailhouse lawyer. Magistrate Judge Stephen Crocker first noted this in a text order from more than a year ago. Dkt. 37 ("Vogelsberg explained that he had received assistance from another inmate preparing his complaint, but that inmate has moved and he

---

[1] For this reason, I am not requiring Vogelsberg to respond to Correct Care's argument that Vogelsberg needs an expert to support his state-law claim that defendant Young Kim inappropriately prescribed naproxen and a blood-thinning drug at the same time. *See* Dkt. 104, at 5. Once I resolve the summary judgment motions as to Vogelsberg's other claims, I will decide the appropriate next steps for that state-law claim.

doesn't know where to find him."). And each time Vogelsberg refuses to meet a deadline, he relies on the same excuse. Dkt. 94 ("The guy that was helping me moved and I'm looking around, but nobody seems very helpful."); Dkt. 109 ("I can't seem to find anyone to explain to me what [summary judgment] is or how to respond to [defendants' motions]. There are not any 'jailhouse lawyers' around that have much input on what I am supposed to do.").

None of Vogelsberg's documents in this case were signed by another prisoner or otherwise identify another prisoner by name. And there is strong evidence that undermines the accuracy of Vogelberg's allegations that he doesn't know what to do and can't find anyone to help him: the timing of Vogelberg's requests for help. The *only* time Vogelsberg says that he is unable to find a jailhouse lawyer to help him is when he is supposed to be complying with a court deadline. But then, only a few days later, he'll file a new motion purportedly prepared by a jailhouse lawyer. For example, on July 15, Vogelsberg said he couldn't find a jailhouse lawyer to help him prepare his reply brief in support of his own Rule 56(d) motion. Dkt. 94. But then on July 26, he filed a lengthy motion to appoint a guardian ad litem, which clearly was prepared by someone who was skilled and knowledgeable. Dkts. 96–99. And on September 4, Vogelsberg said he couldn't find anyone to help him with summary judgment. Dkt. 109. But then on September 10, he filed his motion to strike the deposition transcript, which, again, was filed by someone who seemed to understand the law well. Dkt. 111. Vogelsberg hasn't explained how he is unable to find help to comply with court deadlines, but he can find help to file detailed and sophisticated motions that he wasn't required to file.

Also, as will be discussed further below, Vogelsberg's performance at his depositions shows that he is savvy, knowledgeable, and articulate. His statements at the two recent telephone conferences support the same conclusion. Regardless whether Vogelsberg is trained

6

in the law, he is both resourceful and capable, which undermines his allegation that he is unable to prepare a summary judgment response or find the necessary assistance on his own.

   4. **Vogelsberg's deposition**

Both sets of defendants deposed Vogelsberg in April 2019 at the same time and a copy of the transcript is in the record. Dkt. 68. I have reviewed the deposition and it doesn't reveal that Vogelsberg is mentally deficient in any way.

Vogelsberg starts the deposition by objecting to it on technical grounds that defendants didn't get proper approval for the depo. *Id.* at 5–13. (This is the subject of Vogelsberg's motion to strike the deposition. Dkt. 111.) Again, this suggests a level of legal sophistication possessed by few pro se parties.

Vogelsberg states in the deposition that his schizophrenia medication keeps him drowsy and impairs his memory. Dkt. 68, at 15:35. But I detected no evidence of that in the deposition. He demonstrated a thorough and precise familiarity with the complaint. He cited specific allegations from the complaint. *Id.* at 74:2–3. He discussed specific discovery responses. *Id.* at 78:2–10. He cited specific pieces of evidence in support of his claims. *Id.* at 87:20–88:2.

He demonstrated impressive knowledge of his own medical conditions and seemed to be comfortable talking about fairly technical aspects of those conditions. For example, he described in detail an "aortic stenosis" he had as a child. *Id.* at 26:12–23. He later described a cardiac procedure that he needs. *Id.* at 31:2–16.

He was able to point to minor discrepancies in a timeline he provided the defendants, which undermines a memory problem and shows attention to detail. *Id.* at 61–63.

In sum, Vogelsberg's testimony shows that he is smart, competent, and able to litigate a case better than many pro se litigants.

### 5. Credibility concerns

Vogelsberg's credibility about his own abilities is also called into question by other representations that Vogelsberg has made in this case. First, Vogelsberg complained in his Rule 56(d) motion that he didn't have access to his own medical records. Defendants represented in response to his motion that they had already given him those records. And Vogelsberg referred to his medical records multiple times during his deposition. For example, when asked what materials he relied on when drafting his complaint, Vogelsberg said "CCS's own medical records." Dkt. 68, at 23:5–10. Later, when he was looking at a particular document, he said that the document wasn't "in my copy of medical records." *Id.* at 66:13–15. And when discussing his allegation that defendant Kim put him in segregation to retaliate against him, Vogelsberg stated that "the medical record indicates that he had something to do with it." *Id.* at 82:2–11. These statements from the deposition are inconsistent with Vogelsberg's allegation in his Rule 56(d) motion that he didn't have his medical records. And he hasn't explained why he was aware of those records at his deposition, but then claimed not to have them when it was time to respond to defendants' summary judgment motions.

Second, in his motion to appoint a guardian ad litem, Vogelsberg said that the court's refusal to grant an extension of time was "one of the main reasons" that attorney Walter Stern declined to take his case. Dkt. 96, at 4–5. Vogelsberg repeated that allegation at the September 12, 2019 telephone conference. But that allegation is contradicted by the record. First, I explained to Vogelsberg in April 2019 that any lawyer who agreed to take his case could ask the court to adjust the schedule. Dkt. 64. Because Vogelsberg later notified Stern of that order, Dkt. 84-1, it seems unlikely that any concerns about the schedule motivated Sterns's decision. Second, Stern filed a letter with the court explaining why he didn't take the case. Specifically,

Stern said that he is "simply too busy to take the case and [is] beginning to retire from the practice of law." Dkt. 89. He said nothing about wanting to take the case if the court would grant a larger extension of time to respond to the summary judgment motions.

On their own, these statements by Vogelsberg might not be significant. But combined with the other evidence, they raise questions about Vogelsberg's credibility and his allegations about his ability to litigate this case without a lawyer.

**6. Conclusion**

Looking at all of the evidence together, I am not persuaded that Vogelsberg is unable to litigate this case on his own. So I adhere to my previous conclusion that this is not one of the relatively few cases in which court assistance in recruiting counsel is appropriate. *See Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (pro se plaintiff is not entitled to court assistance in recruiting counsel unless the cases is too complex or difficult for someone with the plaintiff's abilities).

ORDER

IT IS ORDERED that:

1. Plaintiff Jeffrey Vogelsberg's motion to strike his deposition, Dkt. 111, is DENIED.

2. Vogelsberg may have until December 18, 2019, to file his response to defendants' motions for summary judgment. Defendants may have until January 4, 2020, to file a reply. No further extensions will be granted.

Entered September 19, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge